JOHN B. HUTTON, Administrator c. t. a. of Howard Hazel, deceased, v. WEBSTER PHILLIPS, Receiver of Taxes and County Treasurer of Kent County.

(*November* 25. 1949.)

PEARSON, J., sitting.

*John B. Hutton,* for himself as administrator, the plaintiff.

*Max Terry* for defendant.

**Superior Court for Kent County, No. 139, Civil Action, 1949.**

PEARSON, Judge.

Both parties concede that there are due the defendant real estate taxes for several years, as well as some interest on these taxes. They disagree, however, as to the amount of interest due, and this stems solely from the different beginning dates they employ for the purpose of computing interest. The decedent was an aged person to whom, for some time prior to his death, assistance was allowed under the provisions of Chapter 54 of the Rev.Code of Del., 1935, § 1604 et seq., relating to the State Old Age Welfare Commission and State Welfare Home. The decedent owned real estate in Kent County upon which taxes were assessed and levied for a number of years. Payment of these taxes was deferred under the provisions of Rev.Code § 1623, as amended by 42 Laws of Del. c 114, p. 221. The plaintiff administrator contends that under a proper construction of the statute, interest on all taxes

levied and assessed during the years prior to the decedent's death began to run only upon the expiration of 90 days from the decedent's death. The defendant Receiver of Taxes contends that since the taxes for previous years were not paid within a period of 90 days from the decedent's death, interest should be computed for each year "from the date interest would have been chargeable[1]·against a person not receiving old age assistance." The determination of the beginning date question depends upon a construction of the Act referred to, which reads as follows: "1623. Section 20. Taxes and assessments for public purposes by the state or any political subdivision thereof whether county, hundred, city or town, shall be assessed and levied upon the property of aged persons to whom assistance has been allowed under this chapter in the same manner as such taxes and assessments are levied and assessed by law upon the properties of other owners, provided, however, that the time for payment of any taxes or assessments so levied and assessed shall be deferred until such time as the property of such aged person is transferred from the name of such aged person or until such aged person dies, in which event the face amount of the taxes and assessments so levied or assessed, without penalties or interest, shall be payable within ninety days from the date of such transfer or death. After the expiration of such ninety day period there shall be due, with respect to any such property, the same amount or amounts for taxes or assessments as would have been due after the expiration of ninety days from the date said taxes or assessments became due and payable had the property not been owned by an aged person, to whom assistance had been allowed under the chapter; and provided further, however, that in the event of the sale of any such property under any form of execution process (including sales in any form of insolvency proceeding), such taxes and

---

1. Generally, Kent County real estates taxes become due and payable on June 1 of each year. Rev. Code, § 1409. After September 30 in the year in which the taxes are assessed, there is added "to taxes to be paid thereafter a penalty of one per centum per month until the same shall be paid." Rev. Code, § 1423, as amended by 45 Laws of Del., c. 128, p. 441.

assessments shall be due and payable as of the date of the offering of such property for sale under such execution process."

This Act was adopted in 1939 and amended an earlier statute which provided that "The property of old age persons to whom assistance has been allowed shall be wholly exempted from taxation and assessment", the exemption to be terminated upon the discontinuance of the assistance allowed. Under the present Act, taxes are assessed and levied upon the property of persons of the special class described, in the same manner as upon the property of other owners. However, the time for payment of the taxes is "deferred until such time as the property　*　*　*　is transferred　*　*　*　or until such aged person dies". In either event, the taxes "without penalties or interest" are "payable within ninety days from the date of such transfer or death".

Where, as here, the taxes are not paid within 90 days from death, the statute directs that there shall be due the same amount for taxes "as would have been due after the expiration of ninety days from the date said taxes or assessments became due and payable had the property not been owned by an aged person" within the special class. The statute thus provides that the amount payable be determined on an as-if basis; that is, based upon an assumption contrary to fact. The situation to be assumed is found in the expression "had the property not been owned by an aged person" within the class. Now, had the property not been owned by such a person, taxes would have been due and payable each year after they were levied and assessed; and the amount which "would have been due after the expiration of ninety days from the date said taxes*　*　*　became due and payable" is the face amount of the taxes plus interest at the rate of one per cent a month until payment.

That seems to me a plain, clear meaning of the statutory language, in its context. Of course, in so concluding, I have necessarily construed or interpreted the language. It would ob-

viously be impossible to decide that language is "plain" (more accurately, that a particular meaning seems plain) without first construing it. This involves far more than picking out dictionary definitions of words or expressions used. Consideration of the context and the setting is indispensable properly to ascertain a meaning. In saying that a verbal expression is plain or unambiguous, we mean little more than that we are convinced that virtually anyone competent to understand it, and desiring fairly and impartially to ascertain its signification, would attribute to the expression in its context a meaning such as the one we derive, rather than any other; and would consider any different meaning, by comparison, strained, or far-fetched, or unusual, or unlikely.

█ █ Among the most important interpretational considerations in construing language is a finding or conclusion that the language in its context is "plain" or "unambiguous". This consideration is not readily overcome by others which are more in the nature of preferences for one result rather than another, such as, a preference for a "liberal construction", or a "narrow construction", or a construction beneficial to some class of persons, etc. Implicit in the finding of a plain, clear meaning of an expression *in its context,* is a finding that such meaning is rational and "makes sense" in that context. Here, the charging of interest on taxes not paid within 90 days after death of an aged person (or transfer) is certainly rational and "makes sense"—whether we think it desirable or not. Again, such a construction does not bring about a substantial frustration of other aspects of the purpose of the statute. It allows a deferment of payment of taxes during the lives of persons sought to be benefited (or until transfer); and further, does not interfere with the exemption from interest or penalties during a 90 day period following death or transfer. True, it might well be considered a greater benefit, direct or indirect, to the class of persons privileged under the Act, to compute interest on taxes only from a date 90 days after death or transfer. But this greater benefit cannot reasonably be said to follow necessarily

from anything else in the Act, and I find in the Act no justification for holding in favor of such a benefit. The preference for constructions conferring greater benefits is unavailing in face of the plain meaning found here.

█ For the foregoing reasons, my ultimate construction of the Act is that the beginning date for the computation of interest on unpaid taxes for each year is 90 days after the taxes would have been payable if the property had not been owned by a member of the class privileged by the Act. A peremptory writ of mandamus should be denied and the petition dismissed.

An order accordingly will be entered.